IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RYAN MAHENS,

   Plaintiff,

     v.

ALLSTATE INSURANCE
COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:10-CV-174-TWT

ORDER

This is a breach of contract action arising out of an insurance dispute. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 19] and the Plaintiff's Motion for Summary Judgment [Doc. 24]. For the reasons set forth below, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 19] and DENIES the Plaintiff's Motion for Summary Judgment [Doc. 24].

I. Background

This action arises from a homeowners insurance policy issued by Allstate Insurance Company (the "Policy"). The Plaintiff, Ryan Mahens, seeks coverage under the Policy for damages resulting from a water leak at a house located at 2494 Arthurs Court, Marietta, Georgia (the "Property"). The Policy provides coverage for

Mahens' "dwelling including attached structures" [Doc. 19-5 at 6]. "Dwelling" is further defined as "a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence." Id. at 4. The Policy excludes coverage for damage caused by frozen water pipes while the residence is vacant unless the insured uses reasonable care to maintain heat in the building. Id. at 8. Also, the Policy excludes coverage for "seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water . . . from, within or around any plumbing fixtures." Id. at 8.

    Mahens purchased the Property in 2006. Although he had planned to live at the Property, Mahens never moved in. He lived in Florida. Indeed, the Property was unoccupied for approximately eight months before the water damage was discovered. While the Property was vacant, Clifford Ochemba and Laura Restrepo visited the Property periodically. Restrepo was the Plaintiff's real estate agent. Although there was no central heat at the Property, Ochemba claims that he turned on portable electric and kerosene heaters whenever the temperature dropped below 40 degrees Fahrenheit (Ochemba Aff. ¶ 11.)

    On March 3, 2009, Ochemba discovered a water leak at the Property. Subsequently, at Restrepo's direction, Ochemba called a plumber who visited the

Property to investigate. The plumber reported that the leak had been caused by frozen pipes. Restrepo passed this information along to Allstate, who advised her that the damage would not be covered under the Policy. Restrepo then hired another plumber to provide a second opinion. This plumber concluded that "a small leak developed and slowly saturated the 3rd floor, and slowly ran all the way down to the ground level, saturating everything on the way down." (Restrepo Dep., Ex. 8.)

On March 19, 2009, Allstate sent Irving Emmert, an independent expert adjuster, to inspect the Property. Emmert, along with Restrepo, Ochemba, and Shannon Allred, an employee of Integrity Renovation and Remodeling, Inc. ("Integrity"), discussed the steps necessary to repair the Property. According to the Plaintiff, Emmert authorized Integrity to remove the ceiling and walls, along with other repairs. Further, Emmert indicated that Allstate would pay Integrity for the work.

On March 30, 2009, after significant work had been done to repair the Property, Allstate mailed Restrepo a letter indicating that it would send her a check for $42,366. In June 2009, however, Allstate informed Restrepo that it would not pay the claim. On June 29, 2009, Allstate indicated that it would settle with Integrity for $15,000 if Mahens would release all claims against Allstate. On December 21, 2009, Mahens filed this lawsuit seeking to recover under the Policy [Doc. 1]. The Defendant has

filed a Motion for Summary Judgment [Doc. 19]. Allstate argues that there is no coverage under the Policy because Mahens did not reside at the Property. Further, Allstate contends that damages caused by a slow leak are specifically excluded by the Policy. The Plaintiff has also filed a Motion for Summary Judgment on the issue of liability [Doc. 24]. Mahens argues that the loss is covered under the Policy and that Allstate waived its right to deny coverage.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

A.   Allstate's Motion for Summary Judgment

The Defendant contends that there is no coverage under the Policy because Mahens did not live at the Property and because the damages are specifically excluded by the Policy.

1.   Policy Exclusions

First, the Defendant argues that the Policy specifically excludes water damage caused by a slow leak. The Policy excludes coverage for "seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water . . . from, within or around any plumbing fixtures." [Doc. 19-5 at 8]. Although the Plaintiff admits that the water damage was caused by a "slow leak" near a sink in the master bathroom,[1] there is no evidence indicating how long water had been leaking before the damage was discovered. Thus, drawing all inferences in favor of the Plaintiff, the Court cannot say as a matter of law that the leak continued for a period of weeks, months, or years.

---

[1] The first plumber to inspect the Property indicated that the water damage was caused by frozen pipes. The second plumber to investigate, however, concluded that the damage was caused by a leak near a sink in the master bathroom. Mahens contends that the damage was caused by a slow leak rather than frozen pipes (Restrepo Dep. at 68-73, Ex. 8.)

      2.     Residence

Allstate also argues that the Policy required Mahens to reside at the Property. In Georgia Farm Bureau Mutual Insurance Co. v. Kephart, 211 Ga. App. 423 (1993), the plaintiff sued to recover for fire damage under an insurance policy. The policy provided coverage for "the dwelling on the residence premises" defined as "the one family dwelling . . . or that part of any other building; where you reside and which is shown as the 'residence premises' in the Declarations." Id. at 424. At the time of the fire, the plaintiff was not living at the property. The court held that the policy did not cover the loss, reasoning that "[the policy language] require[d] that the named insured live in the residence listed on the declarations page." Id. at 424-425.

Similarly, in Grange Mutual Casualty Co. v. DeMoonie, 227 Ga. App. 812 (1997), the plaintiff brought suit under a policy that covered the "residence premises," defined as "the one or two family dwelling where you reside." Id. at 813. The policy excluded damages caused by frozen pipes when the residence was unoccupied unless the insured used reasonable care to heat the property. Also, the policy excluded damages for vandalism when the premises was vacant for more than 30 days. The plaintiff argued that these provisions contemplated coverage while the premises was unoccupied. The court, however, found that the policy required the insured to live at the residence premises. Indeed, noting the provisions regarding frozen pipes and

vandalism, the court stated that "exclusions from coverage do not negate the requirement that the insured reside in the insured premises." Id. at 814.

By contrast, in Hill v. Nationwide Mutual Fire Insurance Co., 214 Ga. App. 715 (1994), the plaintiff sued for fire damages under an insurance policy. The policy provided coverage for "the dwelling on the residence premises." Id. "Residence premises," in turn, was defined as "the one- or two-family dwelling, other structures and grounds; or that part of any other building where you live, shown as the residence premises on the Declarations." Id. The court found that the policy did not require the insured to live in the residence premises. The court noted that the definition covered both family dwellings *and* parts of other buildings "where you live." Id. at 749. "'[W]here you live,' without any intervening punctuation, [was] only intended to modify 'that part of any other building.'" Id. Thus, the policy covered "the one- or two-family dwelling" whether or not the insured lived there.

Here, as in DeMoonie and Kephart, the Policy defines "dwelling" as "a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside *and* which is principally used as a private residence." [Doc. 19-5 at 4] (emphasis added). The Policy thus requires (1) that the insured property be identified on the Policy Declarations, (2) that the property be principally used as a private residence, and (3) that the insured reside at the property.

See Kephart, 211 Ga. App. at 424 (noting policy imposed requirements that insured live at property, that property be listed on declarations page, and that property be insured's only residence).  Here, "where you reside" modifies "building structure." Unlike Hill, the definition of "dwelling" does not include any other building, structure, or residence.  See Hill, 214 Ga. App. at 717 (noting that policy covers a "one- or two-family dwelling" *or* "that part of any other building where you live.").

The Plaintiff argues, however, that several Policy exclusions contemplate coverage when the Property is unoccupied.  Indeed, the Policy excludes damages caused by freezing temperatures while the premises are unoccupied unless the insured heats the building [See Doc. 19-4 at 8].  Similarly, the Policy provides coverage for vandalism for the first 30 days of vacancy.  Id.  Almost identical policy language, however, was considered in DeMoonie.  See DeMoonie, 227 Ga. App. at 814 (noting policy included provisions for freeze damage and vandalism while property unoccupied).  In that case, the court concluded that "[s]uch exclusions from coverage do not negate the requirement that the insured reside in the insured premises."  Id.  As in DeMoonie and Kephart, the definition of "[dwelling] is in no way ambiguous, nor does it conflict with the exclusions section."  Id.  Indeed, a dwelling may be

temporarily vacant even while the insured resides there.[2]  Here, however, Mahens never lived at the Property.  Thus, the Policy does not cover the water damages caused by the leak.

### 3. Waiver and Estoppel

Mahens contends that Allstate waived its right to deny coverage by indicating that it would pay Integrity for repair work and later attempting to settle with Integrity. In Danforth v. Government Emps. Ins. Co., 282 Ga. App. 421 (2007), the insured sought coverage for damages arising out of an automobile accident.  The insurer brought a declaratory judgment action contending that the policy did not cover the automobile involved in the collision.  The insured, however, argued that the plaintiff was estopped from denying coverage because it had stated, without a reservation of rights, that the policy provided excess coverage, initially paid property and personal injury damages, commenced a defense of the insured, and failed to seek a stay of the underlying tort action.  The court held that the insurer was not estopped from denying coverage and that the policy did not cover the loss.  The court reasoned that "[t]he doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, or its agent, are not available to bring within the coverage of a policy risks not

---

[2]For instance, vandalism occurring while the insured is on a week-long vacation would be covered under the Policy.

covered by its terms, or risks expressly excluded therefrom." Id. at 427 (quoting Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio, 170 Ga. App. 545, 547 (1984)). As discussed above, the loss is not covered under the Policy. Here, as in Danforth, the Defendant's assurances that it would pay for repairs, including its attempt to settle with Integrity, did not waive the requirement that the insured reside in the insured dwelling.

Next, the Plaintiff contends that Allstate is estopped from denying coverage because it knew that Mahens was not residing at the Property. The Plaintiff points out that, at his direction, his Allstate agent mailed the most recent version of the Policy to Mahens' home at 6081 Silver King Boulevard, Coral Gables, Florida. This, Mahens argues, gave Allstate notice that Mahens was not residing at the Property. In American Mutual Fire Insurance Co. v. Durrence, 872 F.2d 378 (11th Cir. 1989), the insured sought coverage for fire damage. The policy excluded coverage if the property had been vacant for more than 30 days. Further, the policy required any waiver to be in writing. Although the dwelling had been unoccupied for several months, the plaintiff alleged that the insurer knew the house was vacant before the fire. The court held, however, that "oral assurances of waiving policy terms do not estop the insurer from relying on the defense of a written-waiver requirement." Id. at 379.

Here, as in <u>Durrence</u>, the Policy provides that "[w]hen Allstate broadens coverage during the premium period without change, you have the new features if you have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement." [Doc. 19-5 at 4]. There was no endorsement here. Thus, even if Allstate knew that Mahens was living in Florida at the time of the loss, the Defendant is not estopped from denying coverage.

      C.     <u>Mahens' Motion for Summary Judgment</u>

In his Motion for Summary Judgment [Doc. 24], Mahens argues that the loss is covered under the Policy, that Allstate waived its right to deny coverage, and that Allstate has acted in bad faith. First, as discussed above, the Policy does not cover the loss because Mahens did not reside at the Property. Second, as discussed above, Allstate did not waive its right to deny coverage. Third, Allstate has not acted in bad faith. Under O.C.G.A. § 33-4-6, "[b]ad faith is a 'frivolous and unfounded denial of liability.'" <u>Murray v. Amex Assur. Co.</u>, No. 106-094, 2007 WL 1582811, at *3 (S.D. Ga. May 30, 2007) (quoting <u>Albergotti v. Equitable Life Assurance</u>, 48 F. Supp. 290 (S.D. Ga. 1942)). "If an insurer had reasonable grounds to contest a claim, then it cannot be held liable under this section." <u>Id.</u> Here, as discussed above, Allstate had reasonable grounds to contest the claim because Mahens did not live at the Property. For these reasons, the Plaintiff's Motion for Summary Judgment [Doc. 24] is denied.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 19] and DENIES the Plaintiff's Motion for Summary Judgment [Doc. 24].

SO ORDERED, this 1 day of April, 2011.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge